IN THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF MISSOURI

REGINALD MCKEITHEN, )
)
           Plaintiff, )
)
vs. ) Case No.
)
ALLIANT TECHSYSTEMS, INC. d/b/a ATK )
and ATK DEFENSE GROUP and SMALL )
CALIBER SYSTEMS and LAKE CITY ARMY )
AMMUNITION PLANT, )
)
           Defendant. )

## COMPLAINT

The plaintiff, Reginald McKeithen ("McKeithen" or "Reggie McKeithen"), by and through his attorneys, Mark D. Katz, Paul G. Gordon and Tiffany D. Hogan, of the law firm of Coronado Katz LLC, makes the following allegations for his claim against the defendant, Alliant Techsystems, Inc. d/b/a ATK and ATK Defense Group and Small Caliber Systems and Lake City Army Ammunition Plant ("ATK"):

## THE PARTIES

1. Reggie McKeithen is an African American male who lives at 8408 E. 92nd Terrace, Kansas City, Jackson County, Missouri. He was employed by ATK until he was suspended and fired, among other adverse actions undertaken by ATK, because of his race and in retaliation for reporting a racial slur in the workplace.

2. Alliant Techsystems, Inc. is a Delaware corporation with its principal place of business located in the State of Minnesota; it does business at the Lake City Army Ammunition Plant located at 25201 E. 78 Highway, Independence, Jackson County, Missouri. Alliant

Techsystems, Inc. does business as ATK, ATK Defense Group, Small Caliber Systems, and Lake City Army Ammunition Plant. Alliant Techsystems, Inc. may be served with process by serving its Registered Agent, C.T. Corporation System, 120 South Central Avenue, Clayton, Missouri 63105.

## JURISDICTIONAL AND VENUE

3. This Court has jurisdiction over the subject matter of the claims in this Complaint under 28 U.S.C. Section 1331 because McKeithen's cause of action arises under the laws of the United States of America; to wit: Title VII of the Civil Rights Act of 1964, 42 U.S.C. Sections 2000e, *et seq.*; and 42 U.S.C. Section 1981.

4. This Court has general personal jurisdiction over ATK because ATK is present and can be found in the State of Missouri, in that ATK is registered to do business as a foreign corporation in the State of Missouri and operates the Lake City Army Ammunition Plant located at 25201 E. 78 Highway, Independence, Jackson County, Missouri.

5. This Court has specific personal jurisdiction over ATK because ATK's actions which are the basis of McKeithen's claim, including but not limited to, McKeithen's employment, McKeithen's discovery and reporting of the racial slur, and ATK's suspension and firing of McKeithen took place in Jackson County, Missouri.

6. Pursuant to 28 U.S.C. Section 1391 and 42 U.S.C. Section 2000e-5(f)(3), the Western District of Missouri is the proper venue for this action because ATK is subject to personal jurisdiction in this judicial district and because a substantial part of the events giving rise to McKeithen's claim occurred within Jackson County, Missouri, which is within the physical boundaries of the Western District of Missouri.

2

7. McKeithen has complied with the statutory prerequisites for filing a Title VII employment discrimination claim against ATK as set forth in 42 U.S.C. Section 2000e-5(f), in that McKeithen timely filed a charge and an amended charge with the E.E.O.C., true and correct copies of which are attached hereto as Exhibits A and B, respectively, and the E.E.O.C. has issued its right to sue letter to McKeithen, a true and correct copy of which is attached hereto as Exhibit C.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

8. ATK is a United States defense contractor that holds itself to be a global industrial company, with fiscal year 2011 sales of $4.84 billion. It has more than 15,000 employees. It has offices in the United States, Europe, Asia/Pacific and the Middle East.

9. On September 22, 2003, Reggie McKeithen was hired by ATK to work at its Lake City Army Ammunition Plant, where he was employed by ATK until he was fired on September 13, 2011.

10. On or about June 2, 2011, while he was at work, McKeithen found a racial slur written on the shift log he left in the log book on the previous day. The log book was used as a means of communication between shifts of employees at ATK. Specifically the slur was as follows: "Fucking cry-baby Nig."

11. The slur was directed at McKeithen in response to a log entry he made encouraging other shifts to keep the work area in an orderly manner.

12. McKeithen reported the slur to two lead people in his area.

13. One lead person took no action. The other lead person reported the slur to ATK's human resources department.

3


14. McKeithen repeatedly requested ATK's human resources department to take action, but ATK's human resources department told McKeithen they could not determine who had written the slur; however, they did not indicate they had engaged in any investigation of the racial slur. Additionally, one human resources employee showed the racial slur was not important to ATK by telling McKeithen: "You people call each other that all the time," or words to that effect.

15. The human resources department addressed log book disputes that did not involve racial slurs differently from the racial slur against Reggie McKeithen; including identifying the disputing parties and imposing discipline, including termination of employment.

16. After weeks of inaction by the human resources department, McKeithen reported the matter of the racial slur directed at him by an employee of ATK in the workplace to ATK's ethics official.

17. On or about August 24, 2011, Reggie McKeithen was told he was being suspended without pay for 3 days. He was further advised that a handwriting analyst said McKeithen had written the racial slur in the log book. McKeithen denied writing the slur and requested copies of the information from the handwriting analyst, but his request was denied.

18. ATK's reliance on the handwriting analyst to fire Reggie McKeithen was unreasonable, in bad faith, reckless and designed to discriminate and retaliate against McKeithen because he had engaged in the protected activity of reporting racial discrimination in the workplace; to wit: the handwriting analyst has a criminal record of stealing and assault; a court of appeals has found evidence in a case supported an attorney's characterization of the analyst as a "charlatan;" the handwriting analyst's opinions have been determined inadmissible on several occasions; the handwriting analyst is not a member of a generally accepted questioned document

examination society; the handwriting analyst failed to undertake an examination of exemplars in a manner that is reliable and generally accepted in the field of questioned document examination.

19. On or about August 29, 2011, ATK told Reggie McKeithen was being suspended without pay for an indefinite period of time and that the investigation was continuing. McKeithen was not interviewed or otherwise provided an opportunity to demonstrate that he was not the author of the racial slur in the log book.

20. On September 13, 2011, Reggie McKeithen was told over the telephone that he was being fired. He was told he would receive a formal, certified letter confirming his termination. The certified letter did not arrive until October 15, 2011.

21. On September 29, 2011 Reggie McKeithen submitted an internal grievance and requested an appeal pursuant to ATK's employee manual, so that he could demonstrate that the reason for his suspensions and firing were factually inaccurate, but McKeithen's request was refused.

22. On September 26, 2011, Reggie McKeithen received notice from the Missouri Department of Labor that ATK had contested his unemployment benefits and his benefits were being reduced because of misconduct at work; however, when McKeithen appealed the ruling, ATK failed and refused to provide evidence of work misconduct to the Missouri Department of Labor – ATK did not even show up to the hearing to support its position or show that it had a good faith basis to contest McKeithen's unemployment benefits.

23. The reduction of unemployment compensation benefits was reversed because ATK failed to present "credible competent evidence ... that [McKeithen] engaged in any behavior defined as misconduct by the statute."

24. Defendant's conduct and actions were discriminatory with respect to Plaintiff's race and in direct retaliation of his reporting degrading, intimidating, offensive, and hostile behavior in the workplace.

25. The conduct of the above-named Defendant, as set forth herein, in violating Plaintiff's rights under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Sections 2000e *et seq.* and the Civil Rights Act of 1866, as amended by the Civil Rights Restoration Act of 1991, 42 U.S.C. Section 1981 caused injuries, damages and harm to Plaintiff, including, but not limited to, past and future economic loss, past and future non-economic losses, including extreme emotional distress, loss of reputation, shame, humiliation, pain and suffering, inconvenience, mental anguish, impairment in the quality of life, and consequential losses.

## COUNT I - VIOLATIONS OF TITLE VII, 42 U.S.C. §§ 2000e *et seq.*
## DISCRIMINATION BASED ON RACE

26. Plaintiff alleges and incorporates by reference, as though fully set forth herein, Paragraphs 1 through 25 of the Complaint.

27. Reggie McKeithen suffered adverse employment and employment-related actions related to his employment at the hands of his employer, ATK, including, but not limited to the following: (a) he was subjected to the racial slur of "Fucking cry-baby Nig;" (b) the use of the slur was ratified by ATK in its failure to investigate the slur or treat it seriously or even to consider it a slur; (c) ATK hired a "charlatan," intentionally and/or in reckless disregard of McKeithen's rights, so as to provide a pretext for disciplining and firing McKeithen; (d) ATK suspended McKeithen for three days; (e) ATK suspended McKeithen indefinitely; (f) ATK fired McKeithen over the telephone but gave him no formal notice of his termination for weeks; (g) ATK refused to allow McKeithen copies of the reports or documents used to internally convict

6

him of wrongdoing; (h) ATK refused to allow McKeithen to appeal the decisions, even though ATK has a dispute resolution process; and, (i) ATK opposed McKeithen's application for unemployment compensation without cause and without credible, competent evidence to do so.

28. The conduct by ATK, by and through its employees and management, as set forth above, was severe, pervasive, degrading, discriminatory, arbitrary and capricious and constitutes unlawful discrimination on the basis of Reggie McKeithen's race in violation of Title VII.

29. The conduct by ATK, by and through its employees and management, as set forth above, was ratified by ATK.

30. As a direct and proximate result of said unlawful employment practices, Reggie McKeithen has suffered and continues to suffer monetary damages, and has suffered and continues to suffer emotional injury, mental anguish, embarrassment and humiliation.

31. As a direct and proximate result of ATK's unlawful conduct, as stated above, Reggie McKeithen has suffered and continues to suffer substantial losses in earnings, job experience, mental health, employee's benefits that he would have received absent ATK's discrimination and lost wages and benefits and other compensable damages.

32. ATK's actions, as stated above, were willful, wanton, malicious, outrageous, oppressive, and made with malice or reckless indifference to Reggie McKeithen's federally protected rights.

## COUNT II - VIOLATIONS OF TITLE VII, 42 U.S.C. §§ 2000e *et seq.*
## RETALIATION FOR PROTECTED ACTIVITY

33. Plaintiff alleges and incorporates by reference, as though fully set forth herein, Paragraphs 1 through 32 of the Complaint.

7

34. Reggie McKeithen suffered adverse employment and employment-related actions related to his employment at the hands of his employer, ATK, including, but not limited to the following: (a) he was subjected to the racial slur of "Fucking cry-baby Nig;" (b) the use of the slur was ratified by ATK in its failure to investigate the slur or treat it seriously or even to consider it a slur; (c) ATK hired a "charlatan," intentionally and/or in reckless disregard of McKeithen's rights, so as to provide a pretext for disciplining McKeithen; (d) ATK suspended McKeithen for three days; (e) ATK suspended McKeithen indefinitely; (f) ATK fired McKeithen over the telephone but gave him no formal notice of his termination for weeks; (g) ATK refused to allow McKeithen copies of the reports or documents used to internally convict him of wrongdoing; (h) ATK refused to allow McKeithen to appeal the decisions, even though ATK has a dispute resolution process; and, (i) ATK opposed McKeithen's application for unemployment compensation without cause and without credible, competent evidence to do so.

35. The conduct by ATK, by and through its employees and management, as set forth above, was severe, pervasive, degrading, discriminatory, arbitrary and capricious and constitutes retaliation for engaging in the protected activity of reporting the use of a racial slur in ATK's log book in violation of Title VII.

36. The conduct by ATK, by and through its employees and management, as set forth above, was ratified by ATK.

37. As a direct and proximate result of said unlawful employment practices, Reggie McKeithen has suffered and continues to suffer monetary damages, and has suffered and continues to suffer emotional injury, mental anguish, embarrassment and humiliation.

38. As a direct and proximate result of ATK's unlawful conduct, as stated above, Reggie McKeithen has suffered and continues to suffer substantial losses in earnings, job

8

experience, mental health, employee's benefits that he would have received absent ATK's discrimination and lost wages and benefits and other compensable damages.

39. Defendant's actions, as stated above, were willful, wanton, malicious, outrageous, oppressive, and made with malice or reckless indifference to Plaintiff's federally protected rights.

## COUNT III - VIOLATION OF THE CIVIL RIGHTS ACT OF 1866 (AND THE 1991 AMENDMENTS THERETO), 42 U.S.C. § 1981 EMPLOYMENT DISCRIMINATION BASED ON RACE

40. Plaintiff alleges and incorporates by reference, as though fully set forth herein, Paragraphs 1 through 39 of the Complaint.

41. Reggie McKeithen suffered adverse employment and employment-related actions related to his employment at the hands of his employer, ATK, including, but not limited to the following: (a) he was subjected to the racial slur of "Fucking cry-baby Nig;" (b) the use of the slur was ratified by ATK in its failure to investigate the slur or treat it seriously or even to consider it a slur; (c) ATK hired a "charlatan," intentionally and/or in reckless disregard of McKeithen's rights, so as to provide a pretext for disciplining and firing McKeithen; (d) ATK suspended McKeithen for three days; (e) ATK suspended McKeithen indefinitely; (f) ATK fired McKeithen over the telephone but gave him no formal notice of his termination for weeks; (g) ATK refused to allow McKeithen copies of the reports or documents used to internally convict him of wrongdoing; (h) ATK refused to allow McKeithen to appeal the decisions, even though ATK has a dispute resolution process; and, (i) ATK opposed McKeithen's application for unemployment compensation without cause and without credible, competent evidence to do so.

9

42. The conduct by ATK, by and through its employees and management, as set forth above, was severe, pervasive, degrading, discriminatory, arbitrary and capricious and constitutes unlawful discrimination on the basis of Reggie McKeithen's race in violation of 42 U.S.C. Section 1981.

43. The conduct by ATK, by and through its employees and management, as set forth above, was ratified by ATK.

44. As a direct and proximate result of said unlawful employment practices, Reggie McKeithen has suffered and continues to suffer monetary damages, and has suffered and continues to suffer emotional injury, mental anguish, embarrassment and humiliation.

45. As a direct and proximate result of ATK's unlawful conduct, as stated above, Reggie McKeithen has suffered and continues to suffer substantial losses in earnings, job experience, mental health, employee's benefits that he would have received absent ATK's discrimination and lost wages and benefits and other compensable damages.

46. ATK's actions, as stated above, were willful, wanton, malicious, outrageous, oppressive, and made with malice or reckless indifference to Reggie McKeithen's federally protected rights.

### COUNT IV - VIOLATION OF THE CIVIL RIGHTS ACT OF 1866 (AND THE 1991 AMENDMENTS THERETO), 42 U.S.C. § 1981 RETALIATION FOR OPPOSING RACIAL DISCRIMINATION

47. Plaintiff alleges and incorporates by reference, as though fully set forth herein, Paragraphs 1 through 46 of the Complaint.

48. Reggie McKeithen suffered adverse employment and employment-related actions related to his employment at the hands of his employer, ATK, including, but not limited to the following: (a) he was subjected to the racial slur of "Fucking cry-baby Nig;" (b) the use of the

10

slur was ratified by ATK in its failure to investigate the slur or treat it seriously or even to consider it a slur; (c) ATK hired a "charlatan," intentionally and/or in reckless disregard of McKeithen's rights, so as to provide a pretext for disciplining McKeithen; (d) ATK suspended McKeithen for three days; (e) ATK suspended McKeithen indefinitely; (f) ATK fired McKeithen over the telephone but gave him no formal notice of his termination for weeks; (g) ATK refused to allow McKeithen copies of the reports or documents used to internally convict him of wrongdoing; (h) ATK refused to allow McKeithen to appeal the decisions, even though ATK has a dispute resolution process; and, (i) ATK opposed McKeithen's application for unemployment compensation without cause and without credible, competent evidence to do so.

49. The conduct by ATK, by and through its employees and management, as set forth above, was severe, pervasive, degrading, discriminatory, arbitrary and capricious and constitutes retaliation for engaging in the protected activity of reporting the use of a racial slur in ATK's log book in violation of 42 U.S.C. Section 1981.

50. The conduct by ATK, by and through its employees and management, as set forth above, was ratified by ATK.

51. As a direct and proximate result of said unlawful employment practices, Reggie McKeithen has suffered and continues to suffer monetary damages, and has suffered and continues to suffer emotional injury, mental anguish, embarrassment and humiliation.

52. As a direct and proximate result of ATK's unlawful conduct, as stated above, Reggie McKeithen has suffered and continues to suffer substantial losses in earnings, job experience, mental health, employee's benefits that he would have received absent ATK's discrimination and lost wages and benefits and other compensable damages.

11

53. Defendant's actions, as stated above, were willful, wanton, malicious, outrageous, oppressive, and made with malice or reckless indifference to Plaintiff's federally protected rights.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays this Court grant the following relief:

A declaratory judgment that Defendant has violated Plaintiff's right to be free from discrimination in the workplace pursuant to the Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Sections 2000e, *et seq.*, the Civil Rights Act of 1866, as amended by the Civil Rights Restoration Act of 1991, 42 U.S.C. Section 1981, and 42 U.S.C. Section 1981a;

Enter an injunction ordering Defendant to make Plaintiff whole with full back pay, benefits and reinstatement to a position Plaintiff would have obtained in the absence of discrimination or, in the alternative, front pay;

An award to Plaintiff for compensatory damages for past and future economic and non-economic losses;

An award to Plaintiff for punitive damages for Defendant's intentionally, willing and egregious conduct;

An award to Plaintiff for reasonable attorneys' fees and costs, including but not limited to expert witness fees, as provided in Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Section 2000e-5(k), and 42 U.S.C. Section 1981a;

Such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby requests a trial by jury on all issues so triable.

Respectfully submitted,

**CORONADO KATZ LLC**

By _/s/ Mark D. Katz_____
Mark D. Katz   Mo. Bar # 35776
Direct: (816) 410-6524
Email: mark@coronadokatz.com
Paul F. Gordon   Mo. Bar # 47618
Direct: (816) 410-6526
Email: paul@coronadokatz.com
Tiffany D. Hogan   Mo. Bar # 62960
Direct: (816) 410-6557
Email: tiffany@coronadokatz.com
14 West Third Street, Suite 200
Kansas City, Missouri 64105
Facsimile: (816) 337-3892

ATTORNEYS FOR REGINALD MCKEITHEN

13

Case 4:12-cv-00491-GAF   Document 1   Filed 04/30/12   Page 13 of 13